```
              DISTRICT COURT OF THE VIRGIN ISLANDS
                DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,       )
                                )
                                )
      Plaintiff,                )
                                )
                                )
      v.                        )   Criminal  No. 2010-35
                                )
                                )
MONIQUE JOHN,                   )
                                )
      Defendant.                )
_____)
```

**ATTORNEYS:**

**Delia Smith, AUSA**
St. Thomas, U.S.V.I.
   *For the plaintiff.*

**Gabriel J. Villegas, AFPD**
St. Thomas, U.S.V.I.
   *For the defendant.*

## MEMORANDUM OPINION

Before the Court is the motion by the defendant, Monique John ("John") for the application of the threshold quantities outlined in the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010)("FSA") for mandatory minimum sentences, to her sentencing.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2010, a grand jury handed down an indictment in the instant case against the defendant.  Count One charged John

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 2

with possession with intent to distribute a controlled substance within 1000 feet of a playground on or about September 10, 2009, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 860(a). Count Two charged John with possession with intent to distribute a controlled substance on or about September 10, 2009, in violation of §§ 841(a)(1) and 841(b)(1)(A)(iii).

A trial in this matter was commenced on August 16, 2011. On August 17, 2011, the jury rendered a verdict of guilty on both counts.

The FSA is the latest entry in a string of legislation related to the criminalization of the possession of or trafficking in crack cocaine. Despite the chemical similarities between crack cocaine and powder cocaine, the drugs receive different treatment for sentencing purposes. The genesis of the differential treatment of crack and powder cocaine offenses was the Anti-Drug Abuse Act of 1986 (the "1986 Act"), 100 Stat. 3207. The Act established "a two-tiered scheme of five- and ten-year mandatory minimum sentences for drug manufacturing and distribution offenses." *Kimbrough v. United States*, 552 U.S. 85, 95 (2007). It employed a "100-to-1 ratio," which "treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." *Id.* at 96.

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 3

While Congress was considering the 1986 Act, the United States Sentencing Commission (the "Sentencing Commission") crafted its Guidelines for the sentencing for drug-trafficking offenses. "The Guidelines use a drug quantity table based on drug type and weight to set base offense levels for drug-trafficking offenses." *Id.* Consistent with the 1986 Act, the Guideline offense levels were tied to the 100-to-1 ratio. *Id.*

After several years of questioning the 100-to-1 crack/powder ratio, the Sentencing Commission issued a report in May 2007 (the "2007 report") recommending that Congress amend the 1986 Act. Congress had previously failed to act on similar suggestions in past reports. The Sentencing Commission elected to "not simply await Congressional Action," and proposed amendments to the Guidelines to become effective November 1, 2007. *Id.* These amendments reduced the base offense level corresponding to each quantity of crack by two levels. *Id.* (quoting Amendments to the Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571-28572 (2007)). The 2007 Report cautioned that an amendment to the Guidelines was merely a "partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio", and "any comprehensive solution requires appropriate legislative action by Congress." United States Sentencing Commission, Report

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 4

to Congress: Cocaine Federal Sentencing Policy 10 (May 2007), available at http:// www. ussc. gov/ r_ congress/ cocaine2007.pdf.

On August 3, 2010, the Fair Sentencing Act was signed into law. It*, inter alia*, amends 21 U.S.C. § 841 (b)(1)(A) and increases the quantity of cocaine base necessary to trigger the five-year mandatory minimum sentence from 5 grams to 28 grams, and increases the threshold quantity necessary to trigger the ten-year mandatory minimum sentence from 50 grams to 280 grams.

## II. **DISCUSSION**

In order to address John's claim, a brief discussion of the relevant statutory framework is necessary. At its core, John's claim raises the issue of whether the law in effect at the time of the commission of a crime, or an amended version of that law at the time of sentencing, controls at sentencing.

The customary approach at common law to resolve the issue presented by John was for a court "'to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.'" *United States v. Jacobs*, 919 F.2d 10, 11 (3d Cir. 1990)(quoting *Bradley v. School Bd. Of Richmond,* 416

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 5

U.S. 696, 711 (1974)).  Concerned about statutory changes and their "abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them," and mindful that such abatements might be "often the product of legislative inadvertence," Congress enacted the saving clause, 1 U.S.C. § 109. *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653 (1974) (quotations omitted).  It provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

In *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653 (1974), the defendant was convicted of a narcotics crime.  At the time of his conviction, 26 U.S.C. § 7237(d) ("section 7237(d)") was in effect, which "provided, inter alia, that certain narcotics offenders sentenced to mandatory minimum prison terms should be ineligible for parole under the general parole statute, 18 U.S.C. s 4202." *Marrero*, 417 U.S. at 654. Thereafter, Congress passed the Comprehensive Drug Abuse Prevention and Control Act of

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 6

1970 (the "1970 Act"). The 1970 Act repealed section 7237(d)[1].

In light of that repeal, the defendant argued that he was eligible for parole. The Supreme Court disagreed.

The Court observed that "the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Marrero*, 417 U.S. at 661.4. Finding that the denial of the opportunity for parole in § 7237(d) constituted part of the respondent's punishment for his narcotics crime, the Court held that the respondent was precluded from pursuing parole.

The United States Court of Appeals for the Third Circuit in *United States v. Jacobs*, 919 F.2d 10 (3d Cir. 1990), confronted a similar issue. In that case, Jacobs was charged with violating 21 U.S.C. § 841(a)(1) on February 21, 1988. At that time, her offense was classified as a Class B felony[2]. Before she was sentenced, the statute governing classification of offenses was amended. Following the amendment, Jacobs' offense was classified

---

[1] The 1970 statute also featured a specific saving provision which mirrored the language of the general saving clause. *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 656 n.4 (1974).

[2] The classification of an offense is significant for probation eligibility purposes. Such classification is governed by 18 U.S.C. § 3559 ("section 3559"). "[A]n individual who is convicted of a Class B felony may not be sentenced to probation, while an individual convicted of a Class C felony is eligible for probation." *Jacobs*, 919 F.2d at 11.

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 7

as a C felony.

In sentencing Jacobs, the district court determined her classification based on the classification system in place at the time of her sentencing. She was sentenced to a two-year term of probation and a $500 fine and a $50 special assessment. The government appealed that determination.

Jacobs argued that the repealed classification statute at issue in her appeal differed in several respects from the repealed statute at the center of the Supreme Court's analysis in *Marrero*.

She suggested "that Congress never intended that the repealed statute should be saved, pointing to the fact that Congress anticipated adjustments in [the repealed statute] from its inception." *Id.* at 12-13.

The Third Circuit rejected Jacobs' attempt to carve out an exception to the saving clause on these grounds:

> [W]e see no indication that we should consider the intended permanence of a repealed statute in determining whether 1 U.S.C. § 109 preserves the statute. In fact, 1 U.S.C. § 109 expressly provides that Congress will indicate exceptions to the effect of the saving statute in the *repealing* statute. ("The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability, ... *unless the repealing Act shall so expressly provide*...." (emphasis added)). We decline to consider Congress' prior indication that 18 U.S.C. §

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 8

    3559 would be amended, because doing so would
    contradict the plain language of 1 U.S.C. § 109.

919 F.2d at 10.

With this context, the Court will now evaluate John's arguments.

### III. <u>ANALYSIS</u>

John asserts that the FSA threshold quantities should apply to her sentencing. Given that she committed her offense prior to the FSA's enactment, John seeks retroactive application of the FSA. She advances several grounds for such an application. First, she argues that the FSA does not fall under the ambit of the saving clause. Second, she suggests that, even if the saving clause is applicable to the FSA, by a "necessary implication" the FSA should apply to all sentences fixed after its enactment. Finally, she contends that the Constitution demands application of the FSA to defendants who committed offenses pre-enactment, but are sentenced post-enactment.

**A. Procedural/Remedial Exception to the Saving Clause**

John asserts that the change in the threshold quantities realized by the FSA, did not eliminate a "penalty, forfeiture, or liability" but rather "worked a procedural change." (Sentencing Mem. in Supp. of Appl. of Fair Sentencing Act of 2010 8.) John

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 9

argues that the FSA falls within an exception to the saving clause for procedural changes. As a general matter, John is correct to the extent that she posits that "[i]f a statutory change is primarily procedural, it will take precedence over prior law in such cases; if the change affects a penalty, the saving clause preserves the pre-repeal penalty." *United States v. Blue Sea Line*, 553 F.2d 445, 448 (5th Cir. 1977). To the extent that she asserts that the FSA is procedural, her argument suffers for want of legal support.

The United States Court of Appeals for the Seventh Circuit considered a similar argument in *United States v. Bell*, 624 F.3d 803, 815 (7th Cir. 2010). In that case, the Seventh Circuit rejected the appellant's characterization of the FSA as a procedural amendment:

> No procedures or remedies were altered by the passage of the FSA. Unlike the statutes analyzed in *Blue Sea Line* and *United States v. Mechem*, 509 F.2d 1193 (10th Cir. 1975) which were aimed at overhauling the Shipping Act of 1916 and the Federal Juvenile Delinquency Act, respectively, the FSA's predominant purpose was to change the punishments associated with drug offenses. The savings statute therefore prevents it from operating retroactively absent any indication from Congress.

*Bell*, 624 F.3d at 815. For similar reasons, the Court finds that the sentencing mandate in the FSA is not a procedural directive. Rather it is a substantive provision that affects mandatory

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 10

minimum sentences, thereby representing a "penalty" within the reach of the saving clause.

### B. Whether the FSA Necessarily Requires Retroactive Application

John next contends that the FSA necessarily implies that Congress intended that it would apply to all defendants sentenced subsequent to its enactment. It is well-settled that the FSA is devoid of an express statement as to its retroactive application. *See, e.g., United States v. Brewer*, 624 F.3d 900, 908 n. 7 (8th Cir. 2010) ("The Fair Sentencing Act contains no express statement that it is retroactive. . . ."); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010)(noting that the FSA "contains no express statement that it is retroactive); *United States v. Dickey*, 2011 WL 49585, at * 8 (W.D. Pa. Jan. 4, 2011)("The Fair Sentencing Act of 2010 consists of nearly 1,300 words-the word 'retroactive' is not among them."). The Court of Appeals for the Third Circuit has addressed the retroactivity of the FSA as to individuals who were both convicted and sentenced prior to the FSA's enactment in *United States v. Reevey*, 631 F.3d 110 (3d Cir. 2010). There, the Court noted that "[t]he FSA does not contain an express statement that the increase in the amount of crack cocaine triggering the five-year mandatory minimum is to be applied to crimes committed before the FSA's effective date."

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 11

*United States v. Reevey*, 631 F.3d 110, 115 (3d Cir. 2010).

Understandably, given this authority, John's only plausible avenue to arrive at a conclusion that the FSA has retroactive effect is a finding by this Court that the FSA, by necessary implication governs all sentences set after its enactment. To achieve that objective, she relies on a principle articulated by the Supreme Court in *Great Northern Railway Company v. United States*, 208 U.S. 452 (1908). In *Great Northern Railway*, the Supreme Court discussed the predecessor statute to § 109[3]: "As the section of the Revised Statutes in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908).

John directs the Court's attention to section 8 of the FSA. In section 8, Congress granted the Sentencing Commission emergency authority to "promulgate the guidelines, policy

---

[3]That statute provided:

Sec. 13. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

*Great N. Ry. Co.*, 208 U.S. at 316.

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 12

statements, or amendments provided for in this Act *as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act . . . .*" Pub. L. No. 111-220, 124 Stat. 2372. She further highlights section 8's broad allowance for the Sentencing Commission to make any amendments to the Federal Sentencing Guidelines it determines is necessary to "achieve consistency with other guideline provisions and applicable law." *Id.* The Sentencing Commission responded to Congress' grant, and issued emergency amendments effective November 1, 2010. Temporary Emergency Amendment to Sentencing Guidelines and Commentary, 75 Fed. Reg. 66188-02, 66191, 2010 WL 4218801 (Oct. 27, 2010). John argues that the goal of conformity contemplated by Congress' grant of emergent authority would be subverted "if the guidelines are being held in abeyance based on old statutory minimums that cannot be effective to a number of sentences over the next five years until the statute of limitations runs on crack cocaine conduct which occurred prior to August 3, 2010." (Sentencing Mem. in Supp. of Appl. Of Fair Sentencing Act of 2010 4.)

She further asserts, that the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. §§ 991-998 provides additional grounds for applying the FSA to her

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 13

sentencing. There, Congress provided that the relevant sentencing guidelines are those "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii). John argues that it would be unfair for defendants who committed offenses post-enactment of the FSA to receive the Guideline benefit, while depriving her of such a benefit. Fundamentally, these arguments are flawed as they conflate the legal underpinnings of advisory guideline provisions with statutory sentencing mandates.

The Sentencing Guidelines and the statutory mandatory minimum represent parallel tracks in the sentencing scheme. Mandatory minimums, and indeed any term of punishment, are penalties determined by Congress for the violation of the laws of the United States. Congress possesses considerable authority to set criminal punishment:

> Subject only to constitutional limitations, such as those prohibiting cruel and unusual punishment, excessive fines, the enactment of ex post facto laws, the imposition of double jeopardy, and those guaranteeing equal protection of the laws, due process of law, etc., the legislature may fix the punishment for crime as it sees fit.

*Chandler v. Johnston*, 133 F.2d 139, 143 (9th Cir. 1943)(quoting 14 Am. Jur. pp. 155, 156, Sec. 507). The Sentencing Guidelines do not represent the handiwork of Congress, but instead are the product of a Congressionally-created independent commission --

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 14

the Sentencing Commission.  Congress tasked the Sentencing Commission with "establish[ing] sentencing policies and practices for the Federal criminal justice system. " 28 U.S.C. § 991(b). "The Commission executed this function by promulgating the Guidelines Manual." *Stinson v. United States*, 508 U.S. 36, 41 (1993).  The Guidelines are provided "for use of a sentencing court in determining the sentence to be imposed in a criminal case . . . ." 28 U.S.C. § 994.  They offer "direction as to the appropriate type of punishment-probation, fine, or term of imprisonment-and the extent of the punishment imposed." *Stinson,* 508 U.S. at 41.

Although both the Sentencing Guidelines and the statutory mandatory minimums revolve around the act of fixing a punishment, a mandatory minimum remains unaltered by Guideline provisions. Indeed, it is incontrovertible that where the Sentencing Guidelines and the statutory mandatory minimums are in conflict, the statute controls. *See, e.g., United States v. Garcia-Ortiz*, 528 F.3d 74, 84-85 (1st Cir. 2008)("The Guidelines cannot supersede the controlling federal statute") ; *United States v. Eggersdorf*, 126 F.3d 1318, 1320 (11th Cir. 1997)("The statute controls in the event of a conflict between the guideline and the statute."); *United States v. Sharp*, 883 F.2d 829, 831 (9th Cir. 1989)("[W]hen a statute requires a sentence different than set by

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 15

the guidelines, the statute controls."). The Sentencing Guidelines acknowledge this order. *See* U.S.S.G. § 5G1.1 ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.")

In practice, if the mandatory minimum for a violation of section 841(a) falls outside Guideline parameters when an offender's sentence is determined, the mandatory minimum governs. Such a result is not inconceivable or alien. Rather, the sentencing scheme has accounted for this sort of variance, and Congress' will, as expressed in statute, prevails.

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court identified a crucial distinction between the Sentencing Guidelines and the statutory mandatory minimums in its discussion of whether a district court was required to sentence within the guidelines proscription for crack and powder cocaine offenses.

The *Kimbrough* Court considered the mirror opposite argument presented by John. There, the Government asserted that the 1986 Act precluded the Sentencing Commission from varying from the 100-to-1 ratio in its Guidelines. The Government recognized that there was no express instruction from Congress that the

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 16

Sentencing Commission conform its guidelines with the 100-to-1 ratio, however it argued that there was an implicit requirement that the Commission and sentencing courts employ the 100-to-1 ratio.  The Government suggested that "[a]ny deviation . . . would be 'logically incoherent' when combined with mandatory minimum sentences based on the 100-to-1 ratio." *Kimbrough,* 552 U.S. at 102 (internal citation omitted).  The Supreme Court rejected the Government's attempt to so link the 1986 Act and the Guidelines:

> This argument encounters a formidable obstacle: It lacks grounding in the text of the 1986 Act. The statute, by its terms, mandates only maximum and minimum sentences: A person convicted of possession with intent to distribute 5 grams or more of crack cocaine must be sentenced to a minimum of 5 years and the maximum term is 40 years. A person with 50 grams or more of crack cocaine must be sentenced to a minimum of 10 years and the maximum term is life. The statute says nothing about the appropriate sentences within these brackets, and we decline to read any implicit directive into that congressional silence. Drawing meaning from silence is particularly inappropriate here, for Congress has shown that it knows how to direct sentencing practices in express terms. For example, Congress has specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders "at or near" the statutory maximum. 28 U.S.C. § 994 (h). See also § 994(i) ( "The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment" for specified categories of offenders.).

*Id.* at 102-03.

That analysis is instructive here.  A disparity between the

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 17

mandatory minimums and Sentencing Guidelines is not fatal to the validity of a mandatory minimum. Such variances may arise in the course of the introduction of legislation and the issuance of new Guideline provisions. Without more, a "necessary implication" does not arise from a difference between the pre-FSA mandatory minimums applicable to offenses committed before the FSA's enactment, and the emergency amendments to the Sentencing Guidelines of October 2010.

John's argument that the FSA's grant of emergent authority to amend Sentencing Guidelines necessarily implicates retroactive application of the minimum mandatory threshold requirements is undermined by other reasonable grounds for such a grant. It is entirely possible that Congress wanted the Guidelines to be amended promptly so that the Guidelines would keep apace with the FSA, and nothing more. *See United States v. Santana*, 2011 WL 260744, at * 18 (S.D.N.Y. Jan. 20, 2011)(remarking that "it seems perfectly rational for Congress to have wanted the Guidelines to correlate to the changes wrought by the FSA for defendants to be sentenced under the FSA's new mandatory minimums, but that is not the same as requiring that all defendants be sentenced pursuant to the FSA's lower mandatory minimums for conduct that pre-dates the FSA"). Indeed, retroactive application of the FSA mandatory minimum quantities was not the sine qua non for that result.

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 18

**C. Constitutional Right to Application of the FSA**

Finally, John argues that the Court should read "the general saving clause, the FSA, and the sentencing guideline amendments in a way that avoids violating the Fifth Amendment guarantee of Equal protection and the Eighth Amendment guarantee against cruel and unusual punishment." (Sentencing Mem. in Supp. of Appl. of Fair Sentencing Act of 2010 14.)

In support of her Fifth Amendment argument, John relies on *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987). There, the Supreme Court discussed the retroactive reach of the new rules of criminal procedure to pending criminal cases. The Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 327 (1987). John argues that the Fifth Amendment requires that the Court abide by the *Griffith* rule in its application of the FSA. Her contention fails as *Griffith* is readily distinguishable from this case. *Griffith* applies to procedural rules. There is no authority that *Griffith* applies to penal statutes. *See United States v. Robinson*, 2010 WL 5423759, at * 1 (7th Cir. 2010)(noting that the defendant "had offered nothing to suggest that *Griffith* applies equally to amendments to

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 19

*legislation* that alter penalties but create no new rights, procedural or otherwise").

John also argues that the mandatory minimums set forth in the 1986 Act have been recognized by the public and Congress as disproportionate penalties. Essentially, she argues that if the Court were to apply the pre-FSA mandatory minimum threshold amounts to her sentencing, it would violate the Constitution's prohibition against cruel and unusual punishment.

Prior to the FSA's increase of the threshold quantities required to trigger the mandatory minimums, the Third Circuit considered whether the 100-to-1 ratio between crack and cocaine powder offenses was disproportionate, *see United States v. Frazier*, 981 F.2d 92, 96 (3d Cir. 1992)(per curiam). Finding that reasonable grounds existed for punishing cocaine base differently from cocaine, the Court concluded "that Congress and the Commission ha[d] not stepped beyond the bounds of the Constitution in selecting the 100-to-1 ratio." *Frazier*, 981 F.2d at 96. Congress' decision to alter that ratio in the FSA, does not now render the ratio in the 1986 act constitutionally disproportionate.

In sum, John has failed to proffer a viable basis for the retroactive application of the FSA threshold quantity triggering

*United States v. John*
Criminal No. 2010-35
Memorandum Opinion
Page 20

the five-year mandatory minimum, to her sentencing.  The Court will thus deny her motion.  An appropriate Order follows.

                                                S_____
                                                  **CURTIS V. GÓMEZ**
                                                      **Chief Judge**